Our next case this morning is Salgado v. Graham Enterprise. And I see both counsel. Ms. Hill, you may proceed. Good morning. May it please the court, my name is Jennifer Hill. I represent the appellant Fidel Salgado. The Second District Court had entered final judgment as to all underlying claims and had closed this matter. The case that we are here before you on is a Title VII National Origin Discrimination Claim. The District Court had entered summary judgment and we ask this court to review the case. Mr. Salgado has been working for Graham Enterprises as a cashier and manager for almost 25 years. For 20 of those years, he helped Graham Enterprises grow its business from one gas station facility to, I believe they have over 30 now. For 20 of the 25 years that Mr. Salgado had worked for Graham Enterprises, he got along well with everyone. And as far as has been shown, he was not subject to any substantial discipline. In 2015, Salgado was placed under the supervision of Clifford Scott. There is direct evidence of bias and animosity of Clifford Scott against Fidel Salgado for being Hispanic and of Mexican origin. Ms. Hill, I've got two questions for you about the record. The general points you're making that we're well familiar with from taking a look at the briefs. What does the record show with respect to the point in time that Mr. Scott made the alleged disparaging remarks to your client? When did that happen? What's the record suggest on that? That's my first question. And then the second one is, what evidence did your client come forward with to call into question the facts around the money missing in those bank deposits? Your Honor, let me address your first question with regard to the time frame. My client has testified that he did not recall when these statements were taken. However, one of the several of the monthly corporate meetings in which Clifford Scott would often comment that they would not order Mexican food. Well, if he doesn't recall when the statements were made, he worked for the enterprise for a long time. That is correct, but he also worked under Clifford Scott for over five years. And he was subject to these comments and other comments from Mr. Scott with regards to his national origin. Just because he doesn't recall them doesn't mean or doesn't recall when they were exactly stated doesn't mean that they weren't said on multiple occasions or that did not transpire around the time that he was being disciplined by Clifford Scott or around the time of his termination. Your client did testify that the derogatory remarks were at least a year or more before the termination of his employment, correct? I believe that he stated that he didn't recall when those statements were made. I don't believe he put a time frame as to when he had heard them or when he was subject to them. Honorable Scudder, let me go back to your second question then with regards to the money situation I believe is what you raised. Yeah, the bank deposits. Did your client come that into question because wasn't he the store manager at the location where the money was missing from the multiple consecutive deposits? He was a store manager at that location. However, he was not the only individual who had access to these deposits. The other individual who had access to the deposits was Clifford Scott and another one of the employees. My client did not have any firm evidence to present as to what transpired with regards to the missing $20 here, $20 there. However, he was not the only person who had access to these funds. John, I hope that addressed your question. Moving on, I'd like to state that there was direct evidence of the bias and animosity of Clifford Scott. He referenced the fact that Mr. Salgado wasn't taking Cinco de Mayo off and asked why. He told Salgado that he must have a small packer like other Mexicans does and there were comments at multiple of the monthly corporate meetings that they don't order Mexican food. The owner, Patrick Graham, was well aware that there was tension between Clifford Scott and Fidel Salgado but never separated the two of them. Clifford Scott was Salgado's immediate supervisor for his last five years of employment and it was Clifford Scott who raised and brought forward all the disciplinary actions taken against Fidel Salgado. Another matter I'd like to address was the district court is not supposed to weigh evidence or determine the truth of the matters asserted in summary judgment but that's exactly what Judge Ellis did with regards to the one video she relied upon in the record. Now that video that was relied upon was from March 2016 over two years prior to Salgado's termination. The defendant admitted that it either destroyed or got rid of subsequent videos from April of 2016 and any videos from 2018 which they relied upon in disciplining Mr. Salgado. The court the district court didn't seem to have any problem with the fact that these videos were missing however that's why we filed for lease amendment complaint to add a spoliation of evidence claim which the district court denied us. Furthermore not only did the district court rely upon the video but it adopted the defendant's version of what the video showed. All you can see on the video is Salgado moving boxes. The statement that were provided by the defendant as to the actions of Mr. Salgado that were allegedly shown on the video are not there. There's no sound and all you see are boxes moving. All the rest of that testimony is speculative and should have been allowed to proceed before a jury to decide what the video actually showed. Another point I'd like to make to this court oh I see that my time is running low I'd like to reserve the remainder of my time for rebuttal thank you. That's fine. Ms. Bartolucci. Hey please the court good afternoon. Your honors if I may I'll readdress the questions Justice Scudder had. The parties in this case were required to prepare a joint statement of undisputed facts. Judge standing order requires that and so both parties participated in preparation of a joint statement of undisputed facts and joint statement paragraph 17 agreed upon by plaintiff's counsel specifically says plaintiff does not remember when the alleged remarks were made by Clifford Scott. So that fact is not in dispute and plaintiff has not provided evidence of any connection between Mr. Scott's allegedly derogatory comments and any adverse employment action. Justice Scudder also asked what evidence plaintiff came forward with to refute the facts regarding the missing deposits and I'll point the court to statement of fact paragraph 79 in which again plaintiff's counsel conceded plaintiff could not explain why the count was inaccurate. So I hope that answers Justice Scudder's questions and I'm here primarily to answer any additional questions the court has. I think the district court correctly found that plaintiff failed to meet his burden of demonstrating that any comments by Mr. Scott had a causal connection to his termination. There was ample documentation of Mr. Salgado's violations of company policies and importantly Mr. Scott was not the only decision maker. In fact he was the lowest decision maker in the hierarchy at Graham and there were usually two to three additional higher-up supervisors and HR personnel and one of the owners of the company himself who would weigh in on adverse employment actions involving Mr. Salgado and there's simply no connection that's been shown between the only person who has made any derogatory comments regarding national origin and the adverse employment actions that were ultimately taken. They were all well supported by investigation and on the video issue I'd just like to point out that the videos themselves are not the evidence of the infractions. The first incident for example was reported by an employee, Rosie, who became very uncomfortable because there was a visitor, a female visitor, visiting Mr. Salgado at the store and Mr. Scott merely reviewed the videotape to corroborate her report and if anything you know the video shows Mr. Salgado's knowledge that he was violating company policy by attempting to hide it. And similarly the other incidents though some events were captured on video the video was not necessary to the conclusions that the events occurred. The bank reported the missing money and so that the only reason video evidence was reviewed in that instance was to confirm whether anyone other than Mr. Salgado had access to the safe and it confirmed that no one did. So but that any defense he might try to imply that someone else could have accessed the money. And similarly the video evidence of Mr. Salgado on another occasion engaging with a non-employee was simply to corroborate evidence that was already discovered by his supervisor. If the court has any questions I'd be happy to entertain them. Apparently not. Thank you very much. Thank you. Ms. Hill, rebuttal. I'd like to address the fact that it was Christopher Scott who initiated and was involved in each one of the disciplinary actions taken against Fidel Salgado. Furthermore Scott openly expressed his frustration to his colleagues at Graham Enterprises that he was upset Salgado was not terminated in April of 2016 when the boxes were moved in front of the camera. So this ongoing animosity and bias towards Fidel Salgado was throughout the time that Clifford Scott was his supervisor. Does the court have any further questions of me? Apparently not. Okay. I then submit this matter on the briefs and thank the court for its time. All right. Thank you very much. Thanks to both counsel. The case is taken under advice.